*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# S T A T E   O F   M I C H I G A N

# C O U R T   O F   A P P E A L S

|  |  |
|---|---|
| *In re* ESTATE OF GERALD JOHN BURGESON, | UNPUBLISHED<br>April 21, 2022 |

NANCY BURGESON,

       Petitioner-Appellant,

v

ERIN ELLISON,

       Respondent-Appellee,

and

ROBERT W. THOMAS, Successor Personal
Representative,

       Appellee.

No. 357245
Lapeer Probate Court
LC No. 17-038602-DE

Before: BORRELLO, P.J., and MARKEY and SERVITTO, JJ.

PER CURIAM.

In this probate action, appellant appeals as of right an order regarding estate issues. We affirm.

## I. BACKGROUND

Decedent, Gerald John Burgeson, died intestate on September 12, 2016, and was survived by appellant (his wife) and two children, including appellee. On May 10, 2017, appellant was appointed personal representative of decedent's estate. As personal representative, appellant completed an initial inventory indicating decedent owned $207,900 of Pfizer stock in a personal account but did not indicate the number of shares that sum represented. However, a June 13, 2017 letter from Computershare—the transfer agency that facilitates the ownership of Pfizer's stocks— showed decedent owned a total of 6,000 shares in an account held in his name only, with a closing

price of $34.65 per share, totaling $207,900. Later, an updated inventory showed a loss to the estate because of a change in assets, including a reduction in decedent's reported ownership of Pfizer stock. The amended inventory indicated 1,952 shares of Pfizer stock were owned solely by defendant at the time of his death.

Appellee, as an interested party, objected to the accounting because of the decrease in value of the estate between the first and final amended inventories, specifically challenging the decrease related to decedent's personal Computershare (Pfizer stock) account. Appellee presented evidence of transfers made by appellant from decedent's personal account (#8625) to appellant's personal account: an August 25, 2017 transfer of 1,952 shares and an August 8, 2018 transfer of 3,804 shares.

Communication with Computershare proved difficult for both parties. Appellant was ordered to produce Computershare account information to appellee after appellee moved to compel this information on November 19, 2020. Subsequently, appellee petitioned the probate court for removal of appellant as personal representative, arguing the estate suffered a loss because of the wrongful transfer of Pfizer shares, which was a breach of appellant's duties as personal representative.

The probate court granted this request on February 25, 2021, appointing Robert W. Thomas (Thomas) as successor personal representative. The probate court thereafter found decedent owned 6,000 shares of Pfizer stock at the time of his death and ordered the stock to be distributed in accordance with the estate. Appellant was ordered to file an estate accounting and appellee was ordered to submit a statement of costs and attorney fees.

Appellant moved for reconsideration. In response, the probate court ordered Thomas to investigate the 6,000 shares' ownership and report his findings to the court. After an investigation, Thomas concluded decedent and appellant owned 2,160 shares of Pfizer stock jointly, and decedent solely owned 6,000 shares of Pfizer stock at the time of decedent's death. Further, Thomas found the 6,000 shares of Pfizer stock personally owned by decedent were not subject to a transfer-on-death designation, meaning the transfer from decedent to appellant's account was not in accordance with any such policy. After hearing Thomas's findings and reading his report, the probate court denied appellant's motion for reconsideration. This appeal followed.

On appeal, appellant challenges three of the court's rulings: (1) that decedent owned 6,000 shares of Pfizer stock in his name alone at the time of his death, to be distributed in accordance with decedent's estate; (2) the removal of appellant as personal representative of the estate; and (3) the requirement appellant pay attorney costs and fees once appellee submits a statement of costs.

## II. SHARES OF PFIZER STOCK

A probate court's factual findings are reviewed for clear error. *In re Temple Marital Trust*, 278 Mich App 122, 128; 748 NW2d 265 (2008). "A finding is clearly erroneous when a reviewing court is left with a definite and firm conviction that a mistake has been made, even if there is evidence to support the finding." *In re Bennett Estate*, 255 Mich App 545, 549; 662 NW2d 772 (2003).

The central issue on appeal is whether decedent owned 6,000 shares of Pfizer common stock in his own name at the time of his death. Appellant contends she and decedent jointly owned 4,048 shares of Pfizer stock before decedent's death, and the decedent solely owned 1,952 shares. However, the documentary evidence supports the finding decedent solely owned 6,000 shares of Pfizer stock at the time of his death.

Appellant acknowledged in her initial inventory, decedent owned personal Pfizer stock with a value of $207,900. This value was confirmed using documentation from Computershare regarding an account held in decedent's name only (#8625), which stated decedent owned 6,000 shares of Pfizer stock valued at $34.65 per share, totaling $207,900. Further, Computershare provided information in response to Thomas's investigation request in an April 9, 2021 letter, showing decedent and appellant jointly owned 2,160 shares of Pfizer stock in a separate account (#8641). There is no documentary evidence supporting appellant's contention she and decedent jointly owned 4,048 shares of Pfizer stock at the time of decedent's death.

As Thomas's report explains, federal tax forms also confirm decedent owned 6,000 shares of Pfizer stock in his personal account at the time of his death. Decedent's 2016 1099 tax form showed $7,200 received in 2016. Thomas's report found the Pfizer dividend rate that year was 30 cents per quarter, or $1.20 per year, adding up to the $7,200 for 6000 shares of Pfizer stock. Additionally, decedent and appellant's joint 2016 Federal Schedule B (Dividends Received) shows two entries: one for $2,592, and one for $7,200. The $7,200 figure represents the dividends received by decedent from his sole Pfizer account (#8625). The $2,592 correlates to dividends received for appellant and decedent's joint Pfizer account (#8641) containing 2,160 shares. Thomas's report further included decedent and appellant's joint 2015 Federal Schedule B, showing two entries for Pfizer dividends: $6,720 and $2,419 at $1.12 per share, again correlating to 6,000 and 2,160 shares respectively.

Appellant argues on appeal that the August 8, 2018 transfer of shares to her individual account was proper because Computershare's policy is to transfer jointly owned stocks to the surviving joint owner's (of which appellant claims she was) account upon death. However, appellant does not provide any evidence to support this policy exists.[1] Appellee argues no transfer-on-death clause or similar policy exists in this case, making the transfers unauthorized. The only evidence regarding whether this type of policy existed is an affidavit of an attorney at appellee's

---

[1] Appellant cites an unpublished opinion as her only authority. "Although MCR 7.215(C)(1) provides that unpublished opinions are not binding under the rule of stare decisis, a court may nonetheless consider such opinions for their instructive or persuasive value." *Cox v Hartman*, 322 Mich App 292, 307; 911 NW2d 219 (2017). Appellant directs this Court to *In re Wetzel*, unpublished per curiam opinion of the Court of Appeals, issued March 13, 2008 (Docket No. 270809), p 6, which states "[e]ven if the joint stock account is not considered a traditional transfer-on-death account . . . and the uniform transfer-on-death security registration provisions do not apply, [the stock firm] still maintains the authority to establish its own policies and procedures regarding the transfer of ownership of the accounts held at its firm." Even if we found the above persuasive, appellant still does not provide any proof any such policy existed with respect to the stock firm or account(s) at issue.

counsel's firm stating she spoke with a representative at Computershare who stated there is no such clause on decedent's personal account. Considering this evidence regarding the absence of a transfer-on-death clause and documentation from Computershare, it was reasonable and not clearly erroneous for the court to make its conclusion regarding the Pfizer shares.

Appellant next argues Thomas's report used improper evidence to determine the number of shares solely owned by decedent when he used decedent's 2015 and 2016 federal tax returns to determine ownership after he received insufficient information from Computershare. Appellant offers no authority establishing this is an inappropriate way to account for the number of shares owned by decedent. Moreover, the trial court also explicitly considered the evidence submitted by the parties in reaching its decision. Indeed, in its written ruling regarding estate issues, the trial court stated, "Upon review of Computershare records, submitted to the court through court order, the Court finds . . . ." Appellant's mere contention that her accounting of the shares was accurate creates no conflict with the documentary evidence.

Appellant also alleges this Court should consider the ethical implications of deciding a particular asset belongs to the estate under MCR 5.117(A). However, MCR 5.117(A) merely states: "An attorney filing an appearance on behalf of a fiduciary shall represent the fiduciary." We find no caselaw or other evidence supporting appellant's argument that the probate court acted improperly under MCR 5.117(A). Thus, appellant has not shown the probate court's decision the 6,000 shares of Pfizer stock belong to the estate was unethical.

## III. REMOVAL OF PERSONAL REPRESENTATIVE

Appellant argues the probate court abused its discretion when it removed her as personal representative. We disagree and affirm.

Appointment of a personal representative is within the trial court's discretion. *In re Kramek Estate*, 268 Mich App 565, 575; 710 NW2d 753 (2005). A probate court's discretionary rulings, such as whether to remove a trustee or personal representative, are reviewed for an abuse of discretion. *In re Temple Marital Trust*, 278 Mich App at 128. "The court does not abuse its discretion when its decision is within the range of reasonable and principled outcomes." *Id*.

This Court reviews questions of statutory interpretation de novo. *Herald Co, Inc v Eastern Mich Univ Bd of Regents*, 475 Mich 463, 470; 719 NW2d 19 (2006). "We interpret statutes to discern and give effect to the Legislature's intent, and in doing so we focus on the statute's text." *Clam Lake Twp v Dept of Licensing & Regulatory Affairs/State Boundary Comm*, 500 Mich 362, 373; 902 NW2d 293 (2017).

A personal representative must "take all steps reasonably necessary for the management, protection, and preservation of, the estate." MCL 700.3709; *In re Kramek Estate*, 268 Mich App at 575. Section 3611 of the Estates and Protected Individuals Code (EPIC), MCL 700.1101 *et seq*., provides the applicable standards for removing a personal representative. *Id*. MCL 700.3611 states, in pertinent part:

> (1) An interested person may petition for removal of a personal representative for cause at any time . . .

(2) The court may remove a personal representative under any of the following circumstances:

(a) Removal is in the best interest of the estate.

(b) It is shown that the personal representative or the persons who sought the personal representative's appointment intentionally misrepresented material facts in a proceeding leading to the appointment.

(c) The personal representative did any of the following:

(*i*) Disregarded a court order.

(*ii*) Became incapable of discharging the duties of office

(*iii*) Mismanaged the estate.

(*iv*) Failed to perform a duty pertaining to the office.

The trial court must cite a legitimate basis for removal that was in the best interests of the estate. *In re Kramek Estate*, 268 Mich App at 575.

Appellant argues the probate court erred because removing appellant as personal representative was not in the best interest of the estate, and the probate court abused its discretion by removing appellant because she did not mismanage the estate's assets. Appellant cites *Kramek*, 268 Mich App at 575, arguing that disagreements arising in probate matters are a "fairly ordinary occurrence," so that such disputes are not grounds for removing the personal representative. In *Kramek*, however, the personal representative was removed merely because he was an interested party to the estate. *Id*. at 576. This is in contrast to the present case where appellant was removed after allegations she mismanaged the estate. Appellant also uses the "ordinary occurrence" quote out of context. This Court in *Kramek* concluded:

> After reviewing the record, we are left with the impression that there was nothing other than an ordinary dispute that was handled expeditiously by the parties and the trial court. Kramek's serving as a personal representative did not complicate this dispute or cause the estate to be unduly burdened. Because there was no basis for concluding that Kramek's removal as a personal representative was in the best interests of the estate, we reverse the trial court's order removing him. [*Id*. at 577.]

In the present case, appellant was removed when the probate court found the removal was in the best interest of the estate. In ruling on appellee's motion for attorney fees, the trial court specifically noted, "Without [appellee's] efforts, the estate would not have been handled accurately or fairly." In *Kramek*, no such finding was made by the probate court. While the dispute regarding the stock shares may be considered a "fairly ordinary occurrence," the dispute here was not handled "expeditiously" by the parties. *Id*. In fact, the dispute over the estate's assets continued for over two years and prompted appellee to file a motion to compel in order to receive necessary documents.

Citing another unpublished opinion, appellant also argues that the personal representative does not need to perform her role perfectly when she is not an accountant or attorney, which appellant is not. *In re Estate of Verga*, unpublished per curiam opinion of the Court of Appeals, issued October 11, 2018 (Docket Nos. 340980; 341346).[2] Even if the errors in accounting for decedent's assets were unintentional, as appellant argues, considering the unauthorized transfers, the probate court did not abuse its discretion when it removed appellant as personal representative in the best interests of the estate.

## IV. ATTORNEY FEES

Appellant challenges the probate's court decision to award attorney fees, but notably, does not challenge the reasonableness of the attorney fees and costs awarded. We disagree with appellant's contention that the probate court abused its discretion in awarding appellee attorney fees.

A probate court's decision whether to award attorney fees and the reasonableness of the fees is reviewed by this Court for an abuse of discretion. *Smith v Khouri*, 481 Mich 519, 526; 751 NW2d 472 (2008). Generally, under Michigan law, attorney fees are not recoverable; however, "attorney fees are allowable for necessary legal services performed on behalf of an estate or its fiduciary." MCR 5.313(A); *In re Temple Marital Trust*, 278 Mich App at 129. "The appellate courts of this state have consistently held that legal services rendered in behalf of an estate are compensable where the services confer a benefit on the estate by either increasing or preserving the estate's assets." *In re Sloan*, 212 Mich App 357, 362; 538 NW2d 47 (1995).

In this case, the probate court found appellee's "petition and efforts on behalf of the estate were correct and beneficial to the proper administration of the estate[,]" and "[w]ithout [appellee's] efforts, the estate would not have been handled accurately or fairly." Specifically, appellee's actions prevented thousands of shares of Pfizer stock from being permanently and improperly removed from the estate, thus benefiting the estate by keeping the proper assets intact.

Appellant argues because her behavior was in good faith, the award of attorney fees was an abuse of discretion. In support of her argument, appellant cites MCL 700.3720, which states: "If a personal representative or person nominated as personal representative defends or prosecutes a proceeding in good faith, whether successful or not, the personal representative is entitled to receive from the estate necessary expenses and disbursements including reasonable attorney fees incurred." But reasonable attorney fees to a personal representative are not at issue here. Appellant appears to presume good faith behavior will protect her from an award of attorney fees in appellee's favor, or apparently allow appellant to collect attorney fees in this case. Appellant provides no evidence or caselaw showing appellant's good faith would preclude the collection of attorney fees and costs. Because appellee and appellee's attorneys acted in the best interest of the estate by preserving its assets, the probate court did not abuse its discretion in granting attorney fees and costs to appellee.

---

[2] Unpublished opinions are not binding on this Court. *Cox v Hartman*, 322 Mich App at 307.

Affirmed. Respondent being the prevailing party, she may tax costs pursuant to MCR 7.219.

/s/ Stephen L. Borrello
/s/ Jane E. Markey
/s/ Deborah A. Servitto